## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

MICHAEL KLING,                                    :

                        Plaintiff,

          -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY[1],

               Defendant.            :

Case No. 3:12-cv-143

District Judge Walter Herbert Rice
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402

---

[1] The Court notes that on February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. See, http://www.ssa.gov/pressoffice . In accordance with Fed.R.Civ.P. 25(d)(1) and the last sentence of 42 U.S.C. Sec. 405(g), Carolyn W. Colvin is automatically substituted as Defendant in this action. However, in accordance with the practice of this Court, the caption remains the same.

U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365  (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984).  However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.*  If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d  437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423.  To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy.  42 U.S.C. §423(d)(2).

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520. First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1. If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed an application for SSD on October 17, 2008, alleging disability from March 18, 1993, due to autistic spectrum disorder, obesity, depression, a back impairment, diabetes, and a heart impairment. PageID 179-82; 203. Plaintiff subsequently amended his onset date to December 31, 1994. PageID 183. The Commissioner denied Plaintiff's application initially and on reconsideration. PageID 128-29; 131-33; 137-39. Administrative Law Judge Carol Bowen held a hearing, PageID 61-126, and subsequently found that Plaintiff was not disabled prior to the expiration of his insured status. PageID 48-59. The Appeals Council denied Plaintiff's

request for review, PageID 40-42, and Judge Bowen's decision became the Commissioner's final decision. See *Kyle v. Commissioner of Social Security,* 609 F.3d 847, 854 (6th Cir. 2010).

In determining that Plaintiff was not disabled prior to the expiration of his insured status, Judge Bowen found that Plaintiff met the insured status requirements of the Act through December 31, 1999. PageID 50, ¶ 1. Judge Bowen also found that prior to the expiration of his insured status, Plaintiff had severe autistic spectrum disorder, nonverbal learning disorder, and dysthymic disorder, but that he did not have an impairment or combination of impairments that met or equaled the Listings. *Id.,* ¶ 3; PageID 52, ¶ 4. Judge Bowen found further that prior to the expiration of his insured status, Plaintiff had the residual functional capacity to perform a full range of work at all exertional levels but with the nonexertional limitations of simple one and two-step tasks in a static work setting with no hazardous conditions and requiring little or no judgment on the job, no production rate pace or strict production deadlines, no interaction with the public, and superficial interaction with co-workers but no tandem tasks. PageID 54, ¶ 5. Judge Bowen then used section 204.00 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and concluded that prior to the expiration of Plaintiff's insured status, there was a significant number of jobs in the economy that Plaintiff was capable of performing. PageID 58, ¶¶ 9, 10. Judge Bowen concluded that prior to the expiration of his insured status, Plaintiff was not disabled and therefore not entitled to benefits under the Act. PageID 59, ¶ 11.

In his Statement of Errors, Plaintiff alleges that the Commissioner erred by failing to find that he is disabled by his mental impairment. (Doc. 7). Therefore, the Court's review of the record will focus on the mental health evidence.

The record contains the office notes from treating psychiatrist Dr. Lunderman dated February 18, 1994, through September 3, 2010. PageID 271-95; 529-36; 548-53. Those notes reveal that Dr. Lunderman treated Plaintiff for depression and anxiety. *Id.* Those notes reveal further that Dr. Lunderman generally reported that Plaintiff's mood was stable, his anxiety was stable, and that he was doing well. *Id.* When he did so*,* Dr. Lunderman assigned Plaintiff a GAF of 65+. *Id.* On February 13, 1997, Dr. Lunderman reported that he had been treating Plaintiff since February, 1994, for dysthymic disorder, he was being maintained on medications, and that he was responding well. PageID 553. Dr. Lunderman also reported through about 2005 that Plaintiff's GAF was 70 and thereafter it was in the 50s. *Id.* On September 9, 2010, Dr. Lunderman reported that Plaintiff had been his patient since 1994, his diagnosis was dysthymic disorder which often has an early and insidious onset and chronic course, and that Plaintiff's chronic symptoms seemed to have had an early adult onset. PageID 548-50. Dr. Lunderman also reported that Plaintiff's capability to maintain productivity in any workplace setting had deteriorated to the point of incapability to be gainfully employed in any setting, and that records indicated that he was terminated from his last known part-time job with MRDD from 1988-1992. *Id.* Dr. Lunderman opined that Plaintiff's diagnosis was dysthymic disorder, his GAF was 55, he was moderately to markedly limited in his abilities to perform work-related activities, he had been diagnosed with a non-verbal learning disability, and that he (Dr. Lunderman) based his opinion on his clinical observations and Plaintiff's self-reports. *Id.*

Plaintiff sought mental health treatment through Crisis Care on August 19, 2008. PageID 370-79. At the time he was evaluated, Plaintiff's diagnoses were identified as major depressive disorder, recurrent, and autistic disorder, and he was assigned a GAF of 60. *Id.*  In addition, it was noted that Plaintiff began receiving mental health intervention as a youth and had been

treated by Dr. Lunderman for the past fifteen years due to depression and autistic disorder "within the autistic spectrum". *Id.* It was noted further that Plaintiff had a college degree, impaired social skills related to autistic disorder, and problems holding employment. *Id.* Plaintiff was referred to South Community for services. *Id.*

The record contains Plaintiff's mental health treatment notes from South Community dated September, 2008, through April 1, 2010. PageID 488-519; 537-40. At the time of Plaintiff's initial evaluation, it was noted that he had a bachelor's degree in accounting and a bachelor's degree in psychology, last worked for his father as a bookkeeper until his father died in 1995, and his diagnoses were identified as depressive disorder NOS and autistic disorder NOS, and he was assigned a GAF of 48. *Id.* The South Community notes reveal that Plaintiff received services related to reducing his anxiety and obtaining employment that wasn't boring and which offered health insurance. *Id.* Those notes also reveal that Plaintiff had not been able to obtain employment and that he attended computer classes through the Pathways Program. *Id.*

Plaintiff underwent a two-week community based work assessment at Goodwill in June-July, 2009. PageID 385-93. The report of that evaluation reveals that the evaluator determined that competitive employment might be feasible for Plaintiff, that he would need assistance in identifying/finding a suitable work setting, he would likely require an environment that provided positive reinforcement with a stern structure particularly when considering social skills and requirements, and that he would experience difficulty on the job when considering work rate. *Id.* Plaintiff also underwent a vision evaluation and it was recommended that he use low vision aids. *Id.*

Plaintiff argues in his Statement of Errors that the Commissioner erred by failing to find that he is disabled by a severe mental impairment. (Doc. 7).

A key question in this case is the severity of any of Plaintiff's impairments before the expiration of his insured status.  A social security disability claimant bears the ultimate burden of proof on the issue of disability.  *Richardson v. Heckler,* 750 F.2d 506, 509 (6th Cir. 1984) (citation omitted).  The claimant's specific burden is to prove that he was disabled on or before the last date on which he met the special earnings requirement of the Act.  *Id.* (citation omitted); *Moon v. Sullivan,* 923 F.2d 1175, 1182 (6th Cir. 1990).   Post insured status evidence of a claimant's condition is generally not relevant.  *Bagby v. Harris,* 650 F.2d 836 (6th Cir. 1981); *see also, Bogle v. Secretary of Health and Human Services,* 998 F.2d 342 (6th Cir. 1993). However, such evidence will be considered if it establishes that an impairment existed continuously and in the same degree from the date the insured status expired.  *Johnson v. Secretary of Health and Human Services,* 679 F.2d 605 (6th Cir. 1982).  Plaintiff's insured status expired on December 31, 1999.  Therefore, Plaintiff must establish that he became disabled on or before that date.

 In support of his Error, Plaintiff points to Dr. Lunderman's September, 2010, opinion. Plaintiff's position is that the Commissioner was required to give controlling weight to that opinion.

There is no dispute that the Commissioner is required to give a treating physician's opinion controlling weight when it is supported by the objective evidence and is not inconsistent with the other substantial evidence.  *Blakley v. Commissioner of Social Security,* 581 F.3d 399, 406 (6th Cir. 2009)(citation omitted).   However, Plaintiff's argument misses the point with respect to Dr. Lunderman's opinion.

As noted above, Plaintiff's insured status expired in December, 1999. Dr. Lunderman offered his opinion that Plaintiff's "capability to maintain productivity in any workplace setting

has deteriorated to the point of incapability to be gainfully employed in any setting" almost eleven years *after* the expiration of Plaintiff's insured status. There is nothing in Dr. Lunderman's September 2010 opinion that relates back to a time prior to the expiration of Plaintiff's insured status. Indeed, Dr. Lunderman's office notes reveal that during the period before December 1999 Plaintiff was doing well and responding to treatment and that his GAF was at least 65, indicating, at worst,  "some" difficulty in functioning. While it may be arguable that Plaintiff's condition deteriorated at some point after 2005, as reflected by Plaintiff's lowered GAF, any such deterioration does not relate to a time prior to the expiration of Plaintiff's insured status in 1999.

Plaintiff also points to his employment evaluations which, according to Plaintiff, reveal he was having difficulty performing his job as an accountant clerk in the early 1990s. See PageID 251-57; 297-305.  However, those evaluations were for Plaintiff's performance in a skilled position. See PageID 119 (VE's testimony that Plaintiff's past relevant work as an accounting clerk was at the skilled level). Judge Bowen determined that prior to the expiration of his insured status, Plaintiff was capable of performing less than skilled work. See PageID 54; 120.

The Court concludes that the Commissioner did not err by failing to find that Plaintiff was disabled by a severe mental impairment prior to the date his insured status expired.

The Court's duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence.  *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982).  The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury."

*LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting,*

*NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The

Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff is not

disabled be affirmed.

March 1, 2013                                        *s/ Michael R. Merz*
                                            United States Magistrate Judge


## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).